The plaintiff's demand in this case amounts to $175, and this is the "amount in controversy" in this case, and is within the jurisdiction of this court. The motion to dismiss the appeal is refused.

## ZENE PATTERSON vs. THE STATE.

### COURT OF APPEALS, AUSTIN TERM, 1882.

*Slander—Admissibility of Evidence.*—In a prosecution for slander under article 645, Penal Code, the defense may prove, first, that the *particular imputation* made against the female is true; second, that her general reputation for chastity, at the time the slander was uttered by him, was bad. But he cannot be permitted to prove any other acts or conduct imputing a want of chastity, except those specifically embraced in the imputation made by him.

Appeal from County Court of Gonzales county—Opinion by Willson, J.—At the January term, 1881, of this court at Galveston, the judgment rendered in this case by the court below was reversed and remanded for a new trial. The Assistant Attorney-General filed a motion for a rehearing, and the case again comes before this court upon that motion. The prosecution is for the offense of slander, under article 645 of the Penal Code. The indictment charges that the defendant " did willfully, wantonly, maliciously and falsely impute orally of one Catherine Eugenie Smith, then and there an unmarried female in this State, a want of chastity, in this, namely, he, the said Zene Patterson, then and there stated to one Milton Vandigriff and one Scott Perkins that he knew she, the said Catherine Eugenie Smith, was pregnant, and that he, the said Zene Patterson and one Joseph Perkins had been having carnal intercourse with her, the said Catherine Eugenie Smith, for the space of about two years." The indictment we hold to be good, and the evidence fully establishes the uttering of the words charged, and that they were uttered wantonly, if not maliciously. The principal question in the case, and the only one noticed by this court in its previous opinion, and the only one which we now propose to discuss, is as to the admissibility of certain testimony offered by the defendant. He proposed to prove certain acts and conduct on the part of the woman Smith tending to show a want of chastity. He made no effort in a direct way to prove the truth of the imputation he had made

against her, but his proposition was to prove indirectly and circumstantially that what he had said about her was true, by proving other acts and conduct by her, which would lead to the conclusion that she would likely be guilty of the particular acts he had charged against her. This evidence when offered was objected to by the State, and was rejected, and the question now is, did the court below err in refusing to admit such testimony? The statute under which this prosecution is instituted is one of recent date. It creates an offense which, until the adoption of our Revised Penal Code, was unknown in the criminal law of this State. It is an offense, also, which was unknown to the common law, and we are not aware of any State which has a Penal Code precisely similar to this one. Hence we have been unable to find any adjudicated case bearing directly upon the question before us, and we must therefore treat the subject as an original one, and determine it without the aid of precedents. In order to arrive at a correct solution of the question, it is proper and necessary that we should consider and understand the purpose and intent of this statute. What existing evil did it seek to remedy? What were the defects in the former law regarding this evil, which this statute proposes to correct? The existing evil was, that the reputation of females for chastity was the mere plaything of wanton, malicious, worthless persons—that the chaste character of the purest and best women in the land was frequently assailed and destroyed by the foul tongue of some degraded slanderer, who was as worthless, pecuniarily, as in principle.

What protection did the law afford against this evil? A civil action for damages; nothing more. If it were an assault upon the woman's person, the law denounced that as a crime, and punished it as such; but if the assault was upon her reputation for chastity, which was dearer to her than even life, then the only remedy offered was the farcical one of a civil action for damages. We say farcical, because, in ninety-nine cases in a hundred, the vile slanderer would be bankrupt and beyond the reach of the law. Experience had taught that this civil remedy was wholly inadequate and ineffectual to suppress the evil, and that legislation was needed to protect the character of our chaste women from the foul breath of the irresponsible slanderer. It was to afford this protection that this statute was enacted, and in construing it we must give to it such meaning as will be most consistent with its language and with its object and spirit. It says to the slanderer, if you falsely and maliciously, or falsely and wantonly, impute a want of chastity to

a female, you have committed an offense and shall be punished therefor, unless you prove the *truth of the imputation*, or that the woman's general reputation for chastity is bad. The law in its mercy permits him to justify his slander by proving the truth of it, or by proving that the woman's general reputation for chastity is bad. (P. C., 646.) It generously permits him to do this, notwithstanding his imputation against her may have been made by him maliciously. But, while it grants to him the privilege of proving the truth of the imputation he has made, does it also extend to him the privilege of proving *ad libitum* other and different acts and conduct of the female tending to prove, or even proving, that she is an unchaste woman? If such is to be the rule, would it not destroy the intended efficacy of this statute? Would it not make this law, instead of a protection to the reputation of chaste women, as it is intended to be, a trap and a snare, in which might be caught and ruthlessly crushed the reputations of the best and purest women of our State? The case now before us is a good illustration of what would be the practical working of such a rule. Here the woman is accused of certain specific acts and conduct, imputing a want of chastity. She and the State are fully prepared to prove the falsity of *this* imputation. She is also fully prepared to prove that her general reputation for chastity is good, and the State is also prepared for this issue. But the defendant, without pretending to prove the truth of the imputation he has made, or without showing her general reputation for chastity to be bad, undertakes to avoid the real issue in the case and prove that this woman had been guilty of other acts and conduct than those he had imputed to her, and which tended to show that she was not a chaste woman. How could it be reasonably expected that the State or the slandered woman could be prepared to disprove these collateral and unexpected issues? They might be as false as the tongue of perjury could invent, and yet, being brought forward unexpectedly, the State would be, in all probability, unable to make their falsehood apparent at the trial. What would be the result? The defendant would be acquitted, and the woman's reputation would be sacrificed—judicially murdered.

It has been well said by Justice Campbell, in the case of Proctor vs. Houghtaling, 36 Michigan, that "it would be very dangerous to allow issues to be made on the trial concerning specific acts of the plaintiff, or specific rumors, or charges against her, not going to

the direct issue in the cause. She could have no means of defense against malicious fabrications, which are by no means unusual in such cases, and the reputation of the purest persons could easily be ruined or damaged by allowing free scope to such testimony. It has often been remarked the general reputation of any one may be expected to be within the knowledge of obtainable witnesses, at all times, but it would be impossible to be prepared for all the particular slanders which prejudiced and malicious witnesses might invent."

The opinion from which we have quoted was rendered in a civil action for slander, but the reasoning, we think, is peculiarly applicable to the question before us.

Again, to further illustrate our idea of such testimony, suppose the case of a woman who has lived in a community several years, and during that time had conducted herself reputably; who, by her conduct has proven herself to be a kind, virtuous, Christian woman; she is the loving wife of a happy husband, the affectionate mother of innocent children—she moves in the best society, is respected and beloved by all, and is an ornament and a blessing to the community. The vile tongue of the slanderer imputes' to her some specific act or conduct showing that she is not a virtuous woman; the slanderer is indicted; the utter falsity of the imputation he has made is overwhelminly proved, and that it was made by him wantonly and maliciously. More than this, he admits perhaps, that he has maliciously lied about this woman, but he sneeringly says, "I can prove that five or ten years ago, when this woman was a gay, giddy girl, she committed acts of indiscretion, or worse than that, if you please, that she gave away her virtue. Yes, I propose, in order to shield myself from this prosecution, to go back over the life of this woman, and prove every indiscretion of which she has ever been guilty. I propose to disregard her present good character, her prudent, virtuous, Christian life for years past, and to show that however° chaste she may now be, she was unchaste in former times. She will be wholly unprepared for these issues, and I will overwhelm and ruin her, and destroy the fair name which she has established in the world." If the law were to grant to the slanderer such licensce, what woman, however pure and unblemished might be her life and reputation, would not shudder at the thought of seeking protection under this statute ? To prosecute the slanderer would be but to expose her-

self to the poisoned darts of malice and perjury, and while she might enter into the prosecution with an unblemished reputation, she would most likely come out of it with her character blackened, and the finger of scorn pointing at her, as an object to be loathed and avoided.

We cannot agree to give an intepretation to this statute, which, in our opinion, would not only render it inoperative for good, but would make of it a dangerous trap and delusion for the woman who might have the temerity to appeal to it for protection. While we have no authority directly in point to cite in support of this view of the law, we have found ample authority in analagous cases, and which we think applicable to the question before us. We refer to the following: Proctor vs. Houghtaling, 37 Mich., 41; Wilson vs. Apple, 3 Ohio, 270; Duval vs. Dabey, 32 Ohio State R., 604; Mathews vs. Davis, 4 Bibb (Ky.), 173; Andrews vs. Van Duzer, 11 Johns (N. Y.), 38; Ormsley vs. Douglass, 2 Abbot's Pr. R. (N. Y.), 407; Stiles vs. Comstock, 9 Howard's Pr. R. (N. Y.), 48.

We therefore conclude that in a prosecution under this statute defendant in justification may prove:

1. That the *particular imputation* which he has made against the female is true.

2. That her general reputation for chastity at the time the slander was uttered by him was bad; but that he cannot be permitted to prove any other acts or conduct imputing a want of chastity, except those specifically embraced in the imputation made by him. The action of the court below in refusing the testimony offered by defendant, and the charge of the court also being in accordance with the views we have expressed, the motion for a rehearing is granted and the judgment of conviction is affirmed.